IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN EATON** | : | Civil No. 1:19-cv-01518 |
| Plaintiff, | : | |
| v. | : | |
| **XPO LOGISTICS WORLDWIDE, INC.** | : | |
| Defendant. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is Defendant XPO Logistics Worldwide, Inc.'s ("XPO") Motion to Dismiss for Failure to Join an Indispensable Party. (Doc. 9.) For the reasons stated below, the court shall deny Defendant's motion.

### I.  BACKGROUND

Plaintiff John Eaton ("Mr. Eaton"), a United States citizen and Pennsylvania resident, claims that XPO Logistics Worldwide, Inc. violated his rights under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Resources Act ("PHRA"). (Doc. 1, ¶¶ 1, 15.) In September 2015, Mr. Eaton worked at an XPO warehouse in Camp Hill, Pennsylvania, for several weeks. He alleges that immediately after his hire, he was subjected to harassment and discrimination based on his deafness. Mr. Eaton alleges that an XPO employee driving a forklift behind him would speed up, then abruptly hit his brakes and honk his horn, knowing Mr. Eaton could not hear him. After Mr. Eaton complained, his XPO supervisor

1

confronted the employee about messing with Mr. Eaton because he is deaf. The harassment continued, so Mr. Eaton was transferred to another XPO warehouse.

At the second warehouse too, Mr. Eaton experienced negative treatment. An XPO employee who was asked to train Mr. Eaton stated, "I'm not working with that deaf motherfucker," and subsequently threw a plastic ball at his face after Mr. Eaton reported the incident to his supervisor. (*Id*., ¶ 23). The XPO Line Boss to whom Mr. Eaton reported that incident found it funny and told Mr. Eaton he could "go to the door" with his complaint. (*Id*., ¶ 24).

Mr. Eaton was thereafter transferred back to the first warehouse, but the poor treatment resumed. When Mr. Eaton complained, he was transferred to a different department. On September 30, 2015, an XPO Main Supervisor approached Mr. Eaton's direct supervisor and aggressively stated, "I want that motherfucker right there," signaling Mr. Eaton. (*Id*., ¶ 29.) Later that day, the Main Supervisor again approached and repeated his demand. As requested, Mr. Eaton reported to the Main Supervisor who waved him away. Mr. Eaton intended to inform his XPO supervisors of this incident, but he was terminated before he could. XPO did not explain the reason for his termination.

Plaintiff alleges he was terminated because of his disability and in retaliation for requesting reasonable accommodations and complaining of disability-based discrimination. Having exhausted his federal and state administrative remedies, he

filed this suit on September 3, 2019. This court has original subject matter jurisdiction over the ADA claim because it is a federal question and has supplemental jurisdiction over the PHRA claim.

On December 3, 2019, XPO moved to dismiss the claim pursuant to Rule 12(b)(7). (Doc. 9.) XPO maintains that it never employed Mr. Eaton. XPO alleges that REM Staffing Companies ("REM") employed Mr. Eaton and assigned him to the XPO facility as a temporary worker pursuant to a staffing contract. XPO claims that Mr. Eaton worked exclusively with REM employees, was supervised and paid by REM, and should have reported incidents to REM supervisors. XPO further alleges it did not maintain a personnel file for Mr. Eaton, receive complaints from Mr. Eaton, have record of Mr. Eaton's transfers, or employ any of the individuals identified in the complaint. XPO claims it only tracked the hours Mr. Eaton worked.

In support of these facts, Defendant filed three documents: a signed statement of a Site Operations Manager ("Manager Statement"), a copy of Mr. Eaton's July 2016 Pennsylvania Human Relations Commission complaint ("PHRC Complaint"), and a staffing contract between REM Staffing, Inc. and Jacobson Warehouse Company, Inc. d/b/a Norbet Dentressangle ("Staffing Agreement").[1] In the Manager Statement, the Site Operation Manager states, *inter alia*, that Mr. Eaton was an REM

---

[1] XPO referenced the contract in a footnote to its statement that XPO "has a long-standing business relationship with REM that is governed by a contract for provision of workers at various facilities." (Doc. 10, p. 7). Without explaining its relationship to the contracting party, XPO implies privity.

3

employee, worked only with REM employees, and was paid and supervised by REM.  It states that XPO did not receive any reports from Mr. Eaton and that XPO did not know about Mr. Eaton's hearing impairment.  Plaintiff's PHRC Complaint indicates that he "was assigned by REM to work at [XPO]'s location." (Doc. 10, p. 32.)  Under the Staffing Agreement, REM must, *inter alia*, assign employees to the Jacobson facilities; reserve the right of supervision, direction and control; report and pay employee wages; and ensure compliance with all laws and regulations (expressly including the ADA).  The Staffing Agreement likewise requires Jacobson Warehouse Company Inc. to, *inter alia*: "properly supervise" assigned employees in its facility; "properly supervise, control, and safeguard its premises, process, or systems"; and provide a safe work site, appropriate information, training, and safety equipment. (*Id.*, pp. 37-38).

Defendant argues the claim must be dismissed because REM is a necessary and indispensable party whose joinder is feasible under Rule 19.  Defendant claims it did not employ Mr. Eaton or the employees named in the complaint and that REM was responsible for virtually all of Plaintiff's allegations.  Defendant argues that the court cannot in equity or good conscience permit the suit to proceed without REM.

Plaintiff argues that REM is not a necessary party.  Plaintiff requests the court, at the motion to dismiss stage, disregard Defendant's statements that expressly contradict factual allegations in Plaintiff's complaint.  Alternatively, Plaintiff argues

that, if the court accepts Defendant's evidence as true, Defendant could still be liable as a joint tortfeasor through its contractual obligations to REM. The motion has been fully briefed and is thus ripe for review.

## II. STANDARD OF REVIEW

In a Rule 12(b)(7) motion to dismiss for failure to join a party, the moving party bears the burden of showing that a non-party is both necessary and indispensable under Rule 19. *Pitts. Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009) (cited in *Disabled in Action v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d. Cir. 2011)). In reviewing such a motion, "the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party." *Id.* (citing *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x. 803, 805 (3d Cir. 2003)). The court may consider "evidence outside of the pleadings" when ruling on a Rule 12(b)(7) motion. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd,* 65 F. App'x 803 (3d Cir. 2003); *see also Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 480 n.4 (7th Cir. 2001); *Citizen Band Potawatomi Indian Tribe of Olka. v. Collier,* 17 F.3d 1292, 1293 (10th Cir. 1994) (quoting 5A Charles A. Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1359, at 427 (1990)). This does not, however, open the door for parties to submit any documents they would like. Instead, the court may only consider

documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016).

"The purpose of Rule 19 is to aggregate into the litigation all the parties whose joinder is necessary for a just adjudication." *Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 365 (E.D. Pa. 2002). Rule 19 outlines a two-step inquiry to determine whether a case may proceed without joining the non-party. *Develcom Funding, LLC v. Am. Atl. Co.*, No. 1:09-cv-1839, 2009 WL 2923064, *2 (D. N.J. Sept. 9, 2009). First, the court analyzes whether the person is "necessary" under Rule 19(a).[2] *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). The person must be joined if joinder is "feasible" and if at least one of two conditions is met:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

---

[2] Although the terms "necessary" and "indispensable" no longer appear in the language of the rule, they remain useful designations and continue to be used in subsequent cases.

FED. R. CIV. P. 19(a)(1). Joinder is feasible if the person is "subject to service of process" and the joinder would not destroy diversity jurisdiction. *Id.* Second, if joinder is necessary but the person cannot feasibly be joined, then the court must analyze factors under Rule 19(b) to determine whether the person is "indispensable" to the fair resolution of the case. *Gen. Refractories Co.*, 500 F.3d at 313 (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)). If the person is found indispensable, then the case must be dismissed without prejudice. *Id. See also Cummings v. Allstate Ins. Co.*, No. 11-cv-02691, 2012 WL 2327855, *4 (E.D. Pa. June 19, 2012). On the other hand, if the person is not even found "necessary" under 19(a), then the court need not reach the question of "indispensability" in 19(b). *Gen Refractories Co.*, 500 F.3d at 312.

### III. DISCUSSION

Both the ADA and the PHRA protect individuals with disabilities from adverse employment actions. *See* 42 U.S.C. § 12101 *et seq.*; 43 PA. STAT. ANN. § 955(a). The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to … discharge of employees, … job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111(2), 12112(a). In order to state a claim under the ADA, a plaintiff must first establish that he or she "(1) has a 'disability'; (2) is a 'qualified individual'; and (3) has suffered an adverse employment decision because of that disability." *Tice v.*

*Centre Area Transp. Auth.,* 247 F.3d 506, 512 (3d Cir. 2001) (citation omitted).³ Where a staffing firm and its client are joint employers, guidance from the Equal Employment Opportunity Commission holds both responsible for providing reasonable accommodations:

> Where a staffing firm and its client are joint employers of a staffing firm worker with a disability, are both obligated to provide a reasonable accommodation that the worker needs on the job? Yes. Because each qualifies as an employer of the staffing firm worker, each is obligated to provide a reasonable accommodation needed on the job, absent undue hardship, if it has notice of the need for the accommodation.

U.S. Equal Emp. Opportunity Comm'n, Notice No. 915.002, *Enforcement Guidance: Application of the ADA to Contingent Workers Placed by Temporary Agencies and Other Staffing Firms* (2000).

Here, fundamental to both claims is the dispute about which entity employed Mr. Eaton. Plaintiff alleged he was XPO's employee. (*See* Doc. 1, ¶ 15 ("Defendant hired plaintiff."); ¶ 16 ("Throughout his employment with Defendant, Plaintiff…"); ¶ 34 ("Defendant terminated Plaintiff's employment.")). XPO contradicts Plaintiff by citing the Manager Statement and PHRC Complaint to show REM employed Mr. Eaton. (Doc. 10, p. 6.). By citing the PHRC Complaint in his own statement of facts, Plaintiff apparently adopts Defendant's exhibit and affirms that REM assigned him

---

³ The PHRA is "interpreted consistently" with the ADA and shares "the same standard for determination of liability." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017) (citation omitted). As such, the claims will be analyzed together.

to the XPO facility. (Doc. 12, p. 3). However, the fact that REM assigned Mr. Eaton to the facility does not disprove that XPO employed him. Existence of an employment relationship, where not specifically defined by statute,[4] is a fact-specific inquiry that weighs various factors pursuant to agency common law. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992). Whether a person is jointly employed depends on several factors, including their "level of control over [him], which entity hired and paid him, and which entity generally controlled his day-to-day activities." *Washington v. Client Network Servs. Inc.*, 590 F. App'x 126, 130 (3d Cir. 2014) (citations omitted). Drawing inferences in favor of the non-moving party, the court infers for the purpose of this motion that XPO and REM jointly employed Mr. Eaton. The court also accepts Plaintiff's allegations that the employees referenced in the complaint, whom XPO disclaims as REM's, are XPO's employees. (*See e.g.,* Doc. 1, ¶¶ 20-25).

Having addressed this factual dispute, the court turns to its legal implication on whether REM must be joined. The court first recognizes that REM's joinder is feasible. Neither party argues that REM would not be subject to service of process or that this court would lose jurisdiction. However, because the court finds REM is

---

[4] The ADA merely defines employer as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day…" and an employee as "an individual employed by an employer." 42 U.S. C. §§ 12111(4), 12111(5)(A).

not necessary under Rule 19(a), it need not determine whether REM is indispensable under Rule 19(b).

In determining whether REM is necessary, the first inquiry is whether the court can "accord complete relief among existing parties" without joining the absent person. FED. R. CIV. P. 19(a)(1)(A). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Gen. Refractories Co.*, 500 F.3d at 313 (citation omitted). Courts also consider the interests of "the public in avoiding repeated lawsuits on the same essential subject matter." *Id*. at 315 (citing FED. R. CIV. P. 19 advisory committee's notes). This provision "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." FED. R. CIV. P. 19(a) advisory committee's notes. Where the substantive law imposes joint liability on more than one party, complete relief can be afforded without joining all the co-obligors. *See Janney Montgomery Scott, Inc.*, 11 F.3d at 405-06 (finding joint and several liability under contracts law and determining that complete relief could be granted without joining a co-obligor to the contract). Rule 19(a) does not disrupt the well-established rule that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Gen. Refractories Co.,* 500 F.3d at 315.

Here, if successful in his claim, Mr. Eaton could be afforded complete relief against XPO.  Plaintiff pleaded that XPO is liable as an employer for discriminating against Mr. Eaton, a qualified individual, by subjecting him to discriminatory conditions and discharging him on the basis of his deafness.  The fact that Plaintiff may also have a suit against REM as a joint employer would not render his relief against XPO incomplete or hollow.  Because XPO and REM are both employers obligated to comply with the ADA, the statutory scheme is compatible with the common law principle of joint and several liability, permitting Plaintiff to sue only one party for what may be an indivisible harm caused by both parties. *See United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268-69 (3d Cir. 1992) (interpreting the common law principle of joint and several liability into a statutory scheme to impose full liability on each party who caused a single, indivisible harm and remanding to allow the defendant to prove the fact-specific issue of divisibility). Furthermore, because *res judicata* would bar Plaintiff from later suing REM, efficiency interests do not favor joinder.  Plaintiff could be afforded complete relief in the present suit against Defendant.

The second inquiry is whether disposing of the action without joining REM would impair or impede REM's ability to protect its claimed interest in the matter. *See* FED. R. CIV. P. 19(a)(1)(B)(i).  "[I]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an

11

issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Gen. Refractories Co.*, 500 F.3d at 316 (quoting *Janney Montgomery Scott*, 11 F.3d at 409). Defendant argues that "[a]ny decision this Court renders in REM's absence would be prejudicial to REM and Defendant since REM hired, assigned, supervised and paid Plaintiff." (Doc. 10, p. 12). Defendants in *Janney Montgomery Scott* argued (albeit unsuccessfully) that collateral estoppel and preclusion doctrines would impair the absent entity's interests, but Defendant here does not identify, nor can the court adduce, *which* of REM's interests is at stake or *how* this action would prejudice that interest.

The final inquiry is whether proceeding without joining REM would leave XPO "subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interests." FED. R. CIV. P. 19(a)(1)(B)(ii). Defendant's allegation of impaired interests, as cited in the previous paragraph, lacks specificity and the support of case law. While the Staffing Agreement is relevant to indemnification between REM and XPO, it does not absolve XPO of liability for actions alleged in the complaint.[5] "[T]he possibility that [the defendant] may have a right of reimbursement, indemnity, or contribution against [the absent party] is not

---

[5] The court notes that Plaintiff neither accepted nor disputed the Staffing Agreement's authenticity but conditioned its argument citing the Staffing Agreement on the court's acceptance of its veracity. (Doc. 12, pp. 8-9.) The court would reach the same outcome whether or not it analyzed the Staffing Agreement.

sufficient to make [the absent party] indispensable." *Janney Montgomery Scott, Inc.*, 11 F.3d at 412 (citing *Field v. Volkswagenwerk AG*, 626 F.2d 293, 298 (3d Cir. 1980)). In *Janney Montgomery Scott, Inc.*, the court applied this logic to find the defendant was not subject to double or multiple liability because he remained free to implead or to separately sue the absent entity for contribution or indemnification. *Id.* at 412. Similarly, any rights of XPO to indemnity or contribution from REM are not prejudiced by this action. Thus, XPO is not subject to any substantial risk of multiple or inconsistent obligations.

## IV. **CONCLUSION**

Defendant did not meet its burden to prove that REM is a necessary party without whom this case cannot proceed. Without joining REM, parties may be afforded complete relief, REM's interests are not impaired, and XPO will not be subject to double or inconsistent liability. For these reasons, the court denies XPO's motion. An appropriate order shall follow.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: June 2, 2020