IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN EATON,** | : | **Civil No. 1:19-CV-01518** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **XPO LOGISTICS WORLDWIDE,** | : | |
| **INC.,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

**MEMORANDUM**

Before the court is the motion for summary judgment filed by Defendant XPO Logistics Worldwide, Inc. (Doc. 26.) For the reasons set forth below, the motion will be granted.

I.   **BACKGROUND**

Plaintiff John Eaton is an individual that has been diagnosed with deafness. (Doc. 1, ¶ 17.) Defendant XPO Logistics Worldwide, Inc., is a provider of transportation and logistics services with facilities across the United States. (Doc. 27 ¶ 1.) In 2015, XPO's Camp Hill facility experienced a surge in demand, which required additional laborers and the creation of a new 3:00 pm - 11:00 pm shift to meet production needs. (*Id*. ¶¶ 6-7.) As a result, XPO contracted with REM Staffing, a temporary staffing agency, which supplied the Camp Hill facility with

1

approximately 40 to 50 temporary warehouse laborers. (*Id.* ¶ 7.) All laborers and supervisors that worked the new shift were employed by the staffing agency. (*Id.* ¶¶ 8-9, 20-22.)

In September 2015, REM assigned Eaton, in his capacity as an REM employee, to XPO's Camp Hill facility. (*Id.* 16, 18, 19.) Eaton began work at the facility on September 11, 2015, where he engaged in various tasks such as assembling and moving boxes of margarine. (*Id.* ¶ 11, Doc. 1, ¶ 15.) Eaton worked the 3:00 pm – 11:00 pm shift, and each of his coworkers and supervisors at the facility were REM employees. (Doc. 27 ¶¶ 8,9, 13, 20-22.) REM also paid Eaton's salary and managed his tax withholdings. (*Id.* ¶¶ 19, 31, 33.)

Eaton alleges that several of his coworkers and supervisors at the facility discriminated against him because he was deaf, including by speeding up to him with a forklift, honking at him, and abruptly hitting the breaks; by stating "I'm not working with that deaf motherfucker"; and by failing to address his complaints of mistreatment. (Doc. 1 ¶¶ 20-31.) Around September 30, 2011, REM re-assigned Eaton to a new assignment, unaffiliated with XPO, that involved manufacturing baseball caps. (Doc. 27 ¶¶ 43-46.)

In September 2019, Eaton initiated this action against XPO alleging discrimination and retaliation under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). (Doc. 1.) On February 26, 2021,

XPO filed a motion for summary judgment. (Doc. 26.) Eaton subsequently advised the court that he is proceeding *pro se,* but he has failed to file any substantive response to XPO's motion.[1] The matter is thus ripe for review.

## II.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute

---

[1] On March 22, 2021, two days after Eaton's response was due, he filed a motion requesting a 14-day extension of his time to respond in order to allow the parties to explore a possible mutual resolution, which the court granted. (Docs. 29-30.)

On April 2, 2021, Eaton's counsel filed a motion for leave to withdraw representation due to a breakdown in the attorney-client relationship. (Doc. 31.) On April 12, 2021, the court granted the motion, provided Eaton with 30 days to retain new counsel, and ordered that a revised scheduling order would be issued at the appropriate time in order to allow Eaton's new counsel sufficient time to respond to the motion for summary judgment. (Doc. 32.)

On April 22, 2021, Eaton filed a motion requesting additional time to retain new counsel. (Doc. 33.) On May 10, 2021, the court granted the motion and ordered that Eaton would have until June 12, 2021 to retain new counsel. (Doc. 34.) On June 9, 2021, Eaton filed a new motion requesting additional time to retain new counsel. (Doc. 35.) The court granted the motion, over XPO's objection, and ordered that Eaton would have until August 2, 2021 to retain new counsel. (Doc 37.) The court further ordered that no additional extensions of time would be granted and that if Eaton did not timely retain new counsel, he would be required to proceed *pro se.* (*Id.*)

On July 19, 2021, Eaton filed a letter requesting a hearing on XPO's motion and stating: "I will not be able to get an attorney to take the case, and I would like to represent myself." (Doc. 38.) The next day, the court denied Eaton's request for a hearing and, in accordance with Local Rule 7.6, ordered Eaton to file any *pro se* written opposition brief by August 10, 2021. (Doc. 40.) The court further ordered that it would deem XPO's motion unopposed if Eaton failed to timely a file a response. (*Id.*) Eaton thereafter filed a short letter with the court containing minimal substance. (Doc. 41, *see infra*, n. 2.)

is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

4

on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.  **DISCUSSION**

A plaintiff alleging employment discrimination under the ADA or PHRA must show an employment or agency relationship with the defendant. *See* 42 U.S.C. § 12111(2); 42 U.S.C. § 12111(5); 43 PA. STAT. AND CONS. STAT. ANN. §§ 954(a), (b); 955. In the context of Title VII, to determine whether an employment relationship exists, the Third Circuit employs a multifactor test derived from traditional agency law and outlined by the United States Supreme Court in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992). *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015). The inquiry focuses on the hiring party's right to control the manner and means by which the work is accomplished, and the factors include:

> the skill required; the source of the instrumentalities and tools; the
> location of the work; the duration of the relationship between the
> parties; whether the hiring party has the right to assign additional
> projects to the hired party; the extent of the hired party's discretion over
> when and how long to work; the method of payment; the hired party's
> role in hiring and paying assistants; whether the work is part of the
> regular business of the hiring party; whether the hiring party is in

business; the provision of employee benefits; and the tax treatment of the hired party.

*Faush*, 808 F.3d at 214 (quoting *Darden*, 503 U.S. at 323-24).

No single factor is dispositive, and the Third Circuit has paid special attention to which entity paid the employee's salary, hired and fired the employee, and has control over daily employment activities. *Id.* Claims asserted under the PHRA are assessed using the same multifactor test. *See id.* at 220; *see also Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). Similarly, with respect to claims asserted under the ADA, the focus is on "the common-law touchstone of control." *See Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 448-49 (2003) (noting the Equal Employment Opportunity Commission's use of the *Darden* factors as cited in its guidelines for ADA claims).

Here, the *Darden* factors overwhelmingly disfavor the existence of any employment relationship between Eaton and XPO. Eaton was hired by REM, not XPO. XPO did not provide Eaton with any significant instrumentalities or tools and instead only issued him a plastic, fluorescent vest. (Doc. 27 ¶ 36.) The duration of the relationship was also minimal, with Eaton's assignment at XPO's facility lasting less than three calendar weeks. The record shows that no XPO employee had supervisory authority over Eaton's work assignments or means of performance, that none of Eaton's coworkers and supervisors at the facility were employed by XPO,

and that XPO did not have authority to assign Eaton additional projects. (*See id.* ¶¶ 9-11, 20-21, 25-28, 43-46.) It also shows that XPO did not directly pay Eaton's salary or provide him with other benefits, and that it was not responsible for withholding Eaton's taxes.

To be sure, some *Darden* factors support the existence of an employment relationship. Eaton's work took place at XPO's warehouse. Eaton did not set his own hours, and he was not hired for any specialized skillset. On balance, however, there is no genuine dispute of material fact that XPO was not Eaton's joint employer given its complete lack of hiring and supervisory authority and day-to-day control over Eaton's work, the short duration of Eaton's assignment at XPO's facilities, and the compensation and benefits structure that governed Eaton's employment. *Compare with Faush,* 808 F.3d at 216 (holding that fact issues precluded summary judgment on the issue of whether an employment relationship existed and finding that "unlike a contractor relationship, in which an agency is hired to perform a discrete task and oversees its employees' work in the completion of that project, the Labor Ready employees were hired on an hourly basis to perform services under the supervision of Tuesday Morning management, which exercised control over the temporary employees' daily work activities. And although the Labor Ready temporary employees worked at the store for a more limited period, Tuesday Morning managed them in the same way it managed its permanent employees"). Eaton therefore lacked

the requisite employment relationship with XPO to recover on his ADA and PHRA claims, and summary judgment is appropriate in favor of XPO.[2]

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant XPO Logistics Worldwide, Inc.'s motion for summary judgment will be granted. An appropriate order shall follow.

*s/Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated:  August 27, 2021

---

[2] Eaton's most recent letter to the court—which states "I told PHRC that I reported everything to REM and they responded that the supervisor worked for XPO and as you can see in the end of [their] investigation they didn't know who he worked for"—does not create an issue of material fact as to whether any of his supervisors were actually employed by XPO for purposes of the *Darden* factors. (Doc. 41.) Moreover, in light of Eaton's failure to file a responsive brief, the court has reviewed the entirety of Eaton's deposition transcript and concludes that none of his testimony raises a dispute of material fact or otherwise calls into question the accuracy of XPO's statement of undisputed material facts.